## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, David Condo, ("your Affiant"), being duly sworn, depose and state as follows:

1.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed as a Special Agent of the FBI since March 28, 1999.  I have investigated federal criminal violations related to crimes against children and cybercrime.  I am currently assigned to the FBI's Innocent Images National Initiative, which investigates matters involving the online sexual exploitation of children including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A.  I have received formal training and have participated in numerous search warrants in these matters.  As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

2. This affidavit is made in support of an application for a warrant to search the premises of Everyone's Internet, 390 Benmar, Suite 200, Houston, Texas 77060 ("subject premises"), for stored wire and electronic communications and transactional records that may be evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, including the possession, transportation and distribution of child pornography.

3.   The purpose of this application is to seize evidence of violations of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A (a)(5)(B), which make it a crime to possess child pornography, and violations of 18 U.S.C. §§ 2252(a)(2) and 2252(A)(a)(2), which make it a crime to receive or distribute child pornography in interstate commerce and §§ 2252(a)(1) and 2252A(a)(1), which make it a crime to transport or ship child pornography in interstate commerce.

-1-

4.  The facts and information contained in this affidavit are based on my own investigation which includes information conveyed to me by other law enforcement officials, other cooperating individuals, my personal experience with related offenses, and my personal knowledge and observations during the course of this investigation.

5.  Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that evidence of violation of 18 U.S.C. §§ 2252 and 2252A are located at the subject premises, in the form of stored wire and electronic communications and transactional records.

6.  As a result of the instant investigation described more fully below, there is probable cause to believe that evidence and fruits of violations of federal law, including 18 U.S.C. §§ 2252 and 2252A, is currently present at the subject premises.

## APPLICABLE LAW

7.  Title 18, United States Code, Sections 2252(a)(1) and 2252A(a)(1), make it a federal crime for any person to ship or transport any visual depiction of a minor engaging in sexually explicit conduct or child pornography (hereinafter referred to jointly as "child pornography") in interstate or foreign commerce.

8.  Title 18, United States Code, Sections 2252(a)(2) and 2252A(a)(2), make it a federal crime for any person to knowingly receive or distribute child pornography that has traveled in interstate or foreign commerce.

9.  Title 18, United States Code, Sections 2252(a)(4)(B) and 2252A(a)(5)(B) make it a federal crime for any person to knowingly possess any material that contains an image of child pornography

that has been mailed, or shipped or transported in interstate of foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

## APPLICABLE DEFINITIONS

10. The term "minor," as used herein, is defined pursuant to Title 18, United States Code, Section 2256(1), as "any person under the age of eighteen years."

11. The term "sexually explicit conduct," as used herein, is defined pursuant to Title 18, United States Code, Section 2256(2) as "actual or simulated (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic or masochistic abuse; or (E) lascivious exhibition of the genitals or pubic area of any person." Factors to be considered in determining if an image constitutes "lascivious exhibition" include 1) whether the focal point of the depiction is the child's genitalia or pubic area; 2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; 4) whether the child is full or partially clothes or nude; 5) whether the depiction suggest sexual coyness or a willingness to engage in sexual activity; 6) whether the depiction is intended or designed to elicit a sexual response in the viewer. United States v. Dost, 636 F.Supp. 828 (N.D. Cal. 1986). See also: United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987); and United States v. Kemmerling, 285 F.3d 644 (8th Cir. 2002);

12. The term "visual depiction," as here herein, is defined pursuant to Title 18, United States Code, Section 2256(5) as including "undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.

13.  The term "child pornography," as used herein, is defined pursuant to Title 18, United States Code, Section 2256(8) as "any visual depiction, including any photography, film, video, picture or computer or computer generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an indentifiable minor is engaging in sexually explicit conduct.

14.  The term "child erotica", as used herein, means "any material, relating to children, that serves a sexual purpose for a given individual."  *See* Kenneth V. Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.  Some of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writings, diaries, and sexual aids.  Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases.  United States v. Cross, 928 F.2d 1030 (11th Cir. 1991) (testimony about pedophiles deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant).

15.  The term "computer" as used herein is defined pursuant to 18 U.S.C. §1030(e)(1), as including an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

## THE INTERNET AND DEFINITIONS OF TECHNICAL TERMS
## PERTAINING TO COMPUTERS

16.   As part of my training and experience as well as discussions with other law enforcement officers with experience in cases involving computer use, I have become familiar with the Internet, which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite.   Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail").   An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called and "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below).   Once the individual has accessed the Internet, that individual can do a variety of things including visiting websites (see definition of "website" below), and making purchases from them, including credit card transactions.

17.   Set forth below are some definitions of technical terms used within this Affidavit, pertaining to the Internet and computers more generally:

a.      **Client/Server Computing**: Computers on the Internet are identified by the type of function they perform.  A computer that provides resources for other computers on the Internet is known as a server.  Servers are known by the types of services they

provide, that is how they are configured. For example, a web server is a machine that is configured to provide web pages to other computers requesting them. An e-mail server is a computer that is configured to send and receive electronic mail from other computers on the Internet.

b.   **Domain Name**:   Domain names are typically strings of alphanumeric characters, with each level delimited by a period that are associated with a unique Internet Protocol ("IP") addresses (defined below).   For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32.   Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level or top-level domain are typically .com for commercial organizations, .gov for the United States government, .org for organizations, and .edu for educational organizations.   Second level names will further identify the organizations, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice.  Additional levels may exist as needed until each machine is uniquely identified.  For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

c.   **Internet Service Providers (ISPs) and the Storage of ISP Records**: Internet Service Providers ("ISPs") are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs may provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communication equipment.

ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those subscriptions are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allow for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage," **see** 18 U.S.C. §2510(17), and the provider of such a service is an "electronic communications service." An "electronic communications service," as defined by statute, is "any service which provides to users thereof the ability to send or receive wire of electronic communications. 18 U.S.C. §2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by a recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "remote computer service." 18 U.S.C. §2711(2).

d.    **Internet Protocol Address**: Every computer or device on the Internet is referenced by a unique IP address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. ISP's can employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISPs employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.

e.    **"Who is" Lookup**:  A "whois" lookup is an Internet based tool that allows users the ability to find the corresponding IP address and web hosting company for a particular domain name.

f.    **Log file**: Log files are records automatically produced by computer programs to document electronic events that occur on computers.  Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.  Logs are often named based on the types of information they contain.  For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

g.    **Website**: A website consists of textual pages of information and associated graphic images.  The textual information is stored in a specific format known as Hyper-Text Mark-Up language (HTML) and is transmitted from the web servers to various clients via the Hyper-Text Transport Protocol (HTTP).

h.    **Website Hosting**: Website hosting provides the equipment and services required to host and maintain files for one or more websites and to provide rapid Internet connections to those websites.  Hosting can be "shared," which means that multiple websites of unrelated companies are on the same server in order to reduce associated costs.  When a client develops a website, the client needs a server and perhaps a web hosting company to host it.  "Dedicated hosting" means that the web hosting company provides all of the equipment and assumes all of the responsibility for

-9-

technical support and maintenance of a website. "Co-location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co-location facilities offer customers a secure place to physically house their hardware and equipment.

## <u>COMPUTERS AND CHILD PORNOGRAPHY</u>

18. Based upon my knowledge, training, and experience and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography have used membership based/subscription based websites to conduct business. With the advent of the Internet, child pornographers can produce, maintain, and share large collections of child pornography around the world quickly and at minimal cost.

-10-

19.    In addition, based upon my own knowledge, training, and experience in child exploitation investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has revolutionized the way in which child pornography collectors interact with and sexually exploit children.  For instance, the Internet allows users, while still maintaining relative anonymity, to easily locate (i) other individuals with similar interests in child pornography; (ii) potential victims and (iii) websites that offer images of child pornography.  Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities and government agencies, to communicate with each other and to distribute child pornography.  These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet.

## THE INVESTIGATION

20.  In January 2004, the National Criminal Investigation Service of Norway, also known as KRIPOS, launched a web-based hotline (www.tips.kripos.no) relating to, among other things, child pornography on the Internet.  They titled this initiative "Operation Rainbow" and began to receive information concerning the commercial online distribution of child pornography.

21.  In February 2004, KRIPOS reviewed several hotline complaints and noticed that a number of the website domain names in the complaints were being registered by the same individuals.  Norwegian investigators found numerous similarities between many of these web sites, including the site design, the graphical solutions chosen, the preview pages, and the method of

payment. These similarities, as well as related data from the domain names, registration information, the placement in IP ranges, and the use of particular domain name servers, led KRIPOS to believe the same individuals were operating a large number of these web sites.

22.    On June 17, 2004, KRIPOS purchased access to the following websites using an undercover credit card:

- "Newboys", advertised at http://newboys.boys-art.org, payment service of "Orangebill" at http://members.boyavs.com

- "Preteen pussy", advertised at http://pt.smallest-pussy.com, payment service of "Obebill" at http://pb.adv-host.net

- "Perfect cuties", advertised at http://www.perfect-cuties.com, payment service of "Orangebill" using http://onl7-17.com

23.    All of the Members Areas to these sites contained pictures of unclothed minors in various poses including child pornography and child erotica. According to Europay (Mastercard) Norway, the money from all of the above-described undercover transactions have gone to the company GSBILL (www.gsbill.com)[1] through the Dutch company InterPay.

24.    GSBILL is a company that submits the credit card information of website customers to a financial institution for processing of the website membership charges. To process these charges, GSBILL has established a "merchant account" with InterPay. GSBILL receives money from the website membership charges into a bank account that is specified in their merchant agreement.

25.    KRIPOS obtained GSBill account information from InterPay. These records showed the

---

[1]  GSBILL also goes by the identifiers GSBill, GSBill.com GSBILL.COM, gsbill, gsbill.com.

money from the KRIPOS undercover purchases went into a bank account held by GSBill in Ijmuiden, The Netherlands. The account records identified the owner of GSBill as Ruslan Dubouski. The company representative is a Dutch citizen named Franciscus Antonius van der Poll. Ruslan Dubouski has been identified by the Belarus Ministry of Internal Affairs (MVD) as a citizen of the country of Belarus.

26. On January 10, 2005, Special Agent David Condo, Innocent Images International Task Force, made an undercover membership purchase into the website www.lolitanymphets.com. SA Condo paid a total of $47.90 on his undercover credit card for one month membership to this site. The company that provided the online form for purchase into this website advertised its name as "Orangebill". On January 18, 2005, Special Agent Condo accessed the Member's Area of this site and downloaded multiple images of unclothed minor girls in a variety of poses. These images included child pornography and child erotica. One of the child pornography images depicts an unclothed girl approximately 12-13 years of age standing with her arms around another unclothed girl approximately 12-13 years of age with both of their vaginal areas displayed to the camera.

27. When Special Agent Condo received his undercover credit card statement, it reflected a charge of $47.90 with a transaction date of January 11, 2005 and listed "GS Bill GSBILL COM" under the heading of "Merchant Name or Transaction Description".

28. On January 31, 2005, Special Agent Condo, while operating in an undercover capacity, accessed the website gsbill.com and filled out an online form requesting clarification of the $47.90 charge. Special Agent Condo received a reply email on February 1, 2005 from support@gsbill.com which stated that GSBILL would refund the charge. SA Condo had never requested a refund or claimed that the charge was fraudulent.

-13-

29.  On February 22, 2005, SA David Condo accessed a website using domain name www.geocities.com/felicia_mullins_45/ which was titled "Underage Material"and which included the advertisement "HOT FREE PEDO GALLERY...Welcome to the forbidden realm where dreams come to life!".  The main page of the site features an image of a topless girl approximately 10-12 years of age in the arms of an adult male as well as a picture gallery of close-up images of females with their breast and vaginal areas exposed.

30.  The website offered visitors the opportunity to purchase a membership to the site.  In addition to the images as described in paragraph 29, the main page of the website provided a link labeled "Purchase Now."  Special Agent Condo activated the "purchase now" link which directed him to a web page enabling him to complete a membership purchase to the website.

31.  Special Agent Condo, using an undercover credit card, purchased a one month membership for $54.95 plus a processing fee of $8.95 for a total cost of $63.90.  After successfully completing the membership purchase, Special Agent Condo was provided with a username and password to the Member's Area of the website which was located at http://darkmem.littleage.com/index.html.   After submitting his username and password, Special Agent Condo gained access to the members only area and viewed and downloaded multiple images of minor females that were in various galleries on the website.  The website provided both child erotica and child pornography.  One of the child pornography images depicted an unclothed girl approximately 12-13 years of age lying on her back with her legs spread apart exposing her vaginal area.  Another child pornography image depicts an unclothed girl approximately 12-13 years of age standing on one leg next to a fireplace with her other leg propped up on the fireplace exposing her vaginal area.  Another child pornography image depicts another unclothed female, approximately 12-

13 years of age with her hand cupping the breast of an unclothed adult female.

_____32. Special Agent Condo performed a "whois" lookup on the domain name littleage.com and found that the content on the website was located at IP address 207.218.219.109 which is assigned to an Internet Service Provider called Everyone's Internet located at 390 Benmar, Suite 200, Houston, Texas 77060.   Web page   http://darkmem.littleage.com/index.html   is a part of the website littleage.com.

33. In response to an Administrative Subpoena, Everyone's Internet provided information that the IP address 207.218.219.109 is a static IP address that was assigned to one of their dedicated web hosting customers.  The account information for their customer is as follows:

Name: Viktar Akalinski

Company:  obebill.com

Address:  Elizabetes Str., 23, Riga, Latvia

34.   On May 27, 2005, Viktar Akalinski was interviewed in Minsk, Belarus by a law enforcement officer of the Republic of Belarus, Ministry of Internal Affairs (MVD), Hi-Tech Crime Unit.  Akalinski stated that he has never had any bank accounts, business concerns, servers, or Internet sites registered in his name, and he has not given consent for anybody to use his name in that manner.  Akalinski stated that he lives alone, is unemployed, and does not have a computer at his house.  He also reports he lost his passport approximately 3 years ago.

35.   On May 27, 2005, Chris Newcomb, Abuse Team Leader at Everyone's Internet, 390 Benmar, Suite 200, Houston, Texas 77060, provided information that obebill.com[2] account had recently been using a different credit card every month to pay its account fees to Everyone's Internet.

_____

[2]  Obebill is also known as Orangebill.

-15-

Because of this payment irregularity, Everyone's Internet terminated the account on May 11, 2005 based on their suspicion of fraud. As part of their standard procedure when an account is terminated for suspected criminal activity, Everyone's Internet made an electronic backup copy of the content on the servers that were rented by obebill.com. Special Agent Condo advised Newcomb to preserve this content in anticipation of the required legal process being served upon Everyone's Internet.

36. On June 10, 2005, Special Agent David Condo obtained a search warrant and executed it on the offices of Everyone's Internet, 390 Benmar, Suite 200, Houston, Texas 77060 for all information and preserved server content for the obebill.com server. The information obtained pursuant to the search warrant revealed multiple databases of customers, webmasters, and advertisers related to memberships to a variety of websites, including the littleage.com site which contains child pornography. The server also contained a table which listed merchants who processed the credit card payments for the websites listed. This table contained only two entries, one of which was GSBill at gsbill.com. The second entry was incomplete.

37. On July 27, 2005, Special Agent David Condo, while operating in an undercover capacity, visited the web site www.gsbill.com and found that this website was being hosted at the IP address of 66.98.198.53. This IP address is also owned and assigned by Everyone's Internet.

38. The investigation has revealed that Everyone's Internet provides web hosting services to GSBILL using servers located at 390 Benmar, Suite 200, Houston, TX 77060.

39. On July 27, 2005, Special Agent David Condo, contacted Chris Newcomb, Abuse Team Leader at the web hosting company Everyone's Internet in Houston, Texas and requested the contents of gsbill.com web server be preserved in anticipation of a search warrant.

## EVERYONE'S INTERNET

40.  Your affiant has personally reviewed the Everyone's Internet website and spoken with Everyone's Internet representatives in Texas.  Everyone's Internet, an Internet Service Provider, is an electronic communication service provider.  Everyone's Internet provides subscribers with access to many Internet services and features.  Everyone's Internet provides an electronic mail (email) service, which allows Everyone's Internet members to communicate with other members, and computer users who may have different electronic mail systems.  Everyone's Internet members are able to access the Everyone's Internet servers through the use of a computer and computer modem or other connection device.  Through this computer access, Everyone's Internet members are able to communicate through electronic mail (e-mail) systems or other software devices.  Through the use of e-mail, the Everyone's Internet member is able to send messages, which can include an attached file, which may contain text messages, graphic image files or other file types.  Those files are sent in a computer format.

41.  Subscribers to Everyone's Internet use email addresses during communications with others.  The email addresses may or may not identify the real name of the person using a particular email address or computer.  Everyone's Internet allows customers to access email from anywhere.

42.  Everyone's Internet also provides web hosting including dedicated web hosting and claims to own one of the largest dedicated hosting firms in the United States.

## LEGAL AUTHORIZATION

43.  The legal authority for this search warrant application is derived from 18 U.S.C. §§ 2701-11, entitled "stored wire and electronic communications and transactional records access." Section 2703(a) provides in relevant part:

A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic system for one hundred and eighty days or less, only pursuant to a warrant issued *using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation* or equivalent State warrant.  A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

18 U.S.C. § 2703(a), as amended with the language in italics, by the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) of 2000, 115 Stat. 272, 291, Pub.L. 107-173, Sec. 220 ("Nationwide Service of Search Warrants for Electronic Evidence").

Section 2703 (b) provides in relevant part:

(1)    A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection–

(A)    Without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued *using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation* or equivalent State warrant.

-18-

*    *    *

(2)    Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service–

*    *    *

(A)    on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service, and (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

44.    The government may also obtain records relating to e-mail communications, such as subscriber identifying information, by way of the search warrant. 18 U.S.C. § 2703(c)(1)(A). No notice to the subscriber is required. 18 U.S.C. § 2703(c)(3).

Section 2711 provides in relevant part:

(2)    the term 'remote computing service' means the provision to the public of computer storage or processing services by means of an electronic communication system; and

(3)    *the term 'court of competent jurisdiction' has the meaning assigned by section 3127, and includes any Federal court within that definition, without geographic limitation.*

18 U.S.C. § 2711, as amended by the USA Patriot Act with the text in italics to authorize

nationwide service of search warrants for electronic evidence.

Section 2510 provides in relevant part:

(8)    "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

* * *

(14)    "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

(15)    "electronic communication service" means any service, which provides to users thereof the ability to send or receive wire or electronics communications;

* * *

(17) "electronic storage" means-

(A)    any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

45.  Pursuant to Title 18, United States Code, Section 3238, when the residence(s) or the offender(s) are unknown, jurisdiction is appropriate in the District of Columbia.

_____

## <u>CONCLUSION</u>

46.  Based upon the above information, I have probable cause to believe that violations of Title 18, United States Code, Sections 2252, 2252A, *et seq*., have been committed and that the items described in Attachment A are evidence, fruits, and instrumentalities of those violations and are located at the subject premises, Everyone's Internet, 390 Benmar, Suite 200, Houston, Texas 77060, in the form of stored wire and electronic communications and transactional records.  By this affidavit, I request that the Court issue a warrant authorizing a search of the subject premises and any computer or media found therein, and the seizure of the items described in Attachment A.


_____
David A. Condo
Special Agent
Federal Bureau of Investigation


Sworn to and subscribed before me this _____ day of September, 2005.


_____
United States Magistrate Judge


-21-

**ATTACHMENT A**

**DESCRIPTION OF ITEMS TO BE SEIZED**

1.      All content of the gsbill.com servers at Everyone's Internet, 390 Benmar, Suite 200, Houston, Texas 77060, including any computer files that were or may have been used as a means to provide images of child pornography over the Internet, in violation of 18 U.S.C. §§ 2252 and 2252A.

2.      All business records, in any form, which pertain to the gsbill.com account and its use of IP address 66.98.198.53, to include all email, ICQ communications, log files of any and all activity, or other communications sent by or received by the account holders, directly or indirectly, whether saved or deleted, and any and all credit card numbers or other methods and identifiers used to pay for the account.